2026 IL App (2d) 250544-U
No. 2-25-0544
Order filed February 24, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v. DARREN L. ALDRIDGE, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.
Honorable D. Christopher Lombardo and James K. Booras, Judges, Presiding.
No. 24-CF-2594

JUSTICE MULLEN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in detaining defendant during the pendency of the State's interlocutory appeal.

¶ 2    Defendant, Darren L. Aldridge, appeals from orders of the circuit court of Lake County (1) finding that compelling reasons existed, pursuant to Illinois Supreme Court Rule 604(a)(3) (eff. Apr. 15, 2024), to support defendant's continued detention during the pendency of the State's interlocutory appeal and (2) denying his motion for subsequent relief (see Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024)). See Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70

(eff. Jan. 1, 2023) (we will refer to these public acts collectively as the "Acts").[1] On appeal, defendant argues that that State failed to show compelling reasons for his continued detention. We affirm.

¶ 3                                    I. STATEMENT OF FACTS

¶ 4                                    A. Background

¶ 5      On December 22, 2024, defendant was charged by complaint with various offenses related to an incident occurring on December 21, 2024. That same day, the State filed a petition to detain. In support of its petition, the State set forth the following synopsis of events. On December 21, 2024, Officer Molina of the Waukegan Police Department was on patrol when he observed a disturbance. He and other officers investigated the disturbance. Upon arrival, the officers heard someone yelling "he is shot[,] he is shot." Officer Molina spoke with Lymon Canada who advised him that she and her husband, Donald Williams, observed defendant as he was involved in a domestic dispute. Williams saw defendant push his partner, at which time Williams intervened. As Williams attempted to provide aid to defendant's partner, defendant pulled out a pistol, brandished it, pointed the gun towards Williams, and pulled the trigger, firing the pistol. Defendant again pointed the gun at Williams and pulled the trigger, but the weapon did not fire. Officer Molina spoke to multiple witnesses, all of whom described the weapon as a chrome semi-automatic 9 mm handgun.

¶ 6      As officers spoke with witnesses on scene, they pointed to defendant, whom the officers observed fleeing the scene on foot. Defendant ran into a nearby building. Officers followed

---

[1]Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

defendant into the building and were able to apprehend him. After conducting a sweep of the area, officers located a pistol matching the witnesses' description. Canada and another witness identified defendant as the individual who had brandished and fired the pistol at Williams.

¶ 7    The State also proffered in its petition that at the time of this incident, defendant was on pretrial release in Cook County case No. 24400313601, where he was charged with misdemeanor reckless conduct, resisting arrest, and obstruction. The sworn complaint in case No. 24400313601 states that defendant "knowingly and intentionally obstructed an investigation of a man with a gun[,] *** matched the description of the male with a gun[,] and refused to comply and ran from officers." While on pretrial release in case No. 24400313601, defendant was also charged with domestic battery in Cook County case No. 24DV4088001, where he was alleged to have choked his partner and struck her in the face. Case No. 24DV4088001 was later dismissed. Additionally, defendant does not have a Firearm Owner's Identification (FOID) card or a Concealed Carry License (CCL) as he was previously convicted of aggravated unlawful use of a weapon in Cook County case No. 11CR161301.

¶ 8    On December 23, 2024, following a hearing, the trial court entered an order granting the State's petition and ordering defendant detained. While the report of proceedings for this hearing is not included in the record before us, the trial court summarized its findings in a written order.

¶ 9    On January 8, 2025, defendant's charges were superseded by indictment. A grand jury charged defendant with one count of aggravated discharge of a firearm (720 ILCS 5.24-1.2(a)(2) (West 2024)), a Class 1 felony; one count of aggravated unlawful possession of a weapon (720 ILCS 5/24-l.6(a)(1)(3)(A-5) (West 2024)), a Class 2 felony; one count of aggravated unlawful possession of a weapon (enhanced) (720 ILCS 5/24-l.6(a)(1)(3)(C) (West 2024)), a Class 2 felony;

and one count of unlawful possession of a weapon (720 ILCS 5/24-1. l(a) (West 2024)), a Class 3 felony. Defendant remained detained pending trial.

¶ 10    On April 21, 2025, defendant moved to suppress evidence obtained by officers in this matter following the sweep of the building where defendant was apprehended. Following a hearing, the trial court granted defendant's motion on July 2, 2025. Specifically, the trial court granted the motion with respect to the firearm seized in the matter as part of the officers' sweep of the building. Defendant remained detained pending trial in this matter.

¶ 11    On July 14, 2025, the State filed a motion to reconsider the trial court's ruling on defendant's motion to suppress evidence. Following a hearing that same day, the trial court denied the State's motion to reconsider.

¶ 12    On July 16, 2025, the State filed a notice of appeal with respect to the trial court's rulings granting defendant's motion to suppress and denying the State's motion to reconsider. That same day, the State also filed a certificate of impairment alleging that the trial court's ruling on the motion to suppress substantially impairs the State's ability to prosecute the charges in this matter.

¶ 13                                      B. Detention Hearing

¶ 14    On July 23, 2025, on defendant's motion, the parties convened for a hearing on defendant's continued detention pending the State's appeal. Defendant urged the trial court to release him during the appeal. In support of defendant's position, defense counsel cited Illinois Supreme Court Rule 604(a)(3) (eff. Apr. 15, 2024), which provides that a defendant shall not be held in jail during the pendency of an appeal unless there are compelling reasons for his or her detention. Counsel noted that in *People v. Beaty*, 351 Ill. App. 3d 717 (2004), the appellate court found that compelling reasons existed for continued detention where the defendant was charged with aggravated criminal sexual assault and was subject to a mandatory life sentence if convicted. Further, the defendant

- 4 -

had prior convictions for sexually assaulting the same victim. Defense counsel argued that *Beaty* was "very different" from the instant case "because of the nature of the mandatory life sentence [the defendant] was facing, as well as very strong evidence and the threats to the public and specifically the victim in that case."

¶ 15    Defense counsel further asserted that in the instant case, the State did not have a strong case. In support of this assertion, he noted that there was no video of the alleged shooting, no shell casings were recovered from the scene, and that the defense had not been able to locate the witnesses interviewed by Officer Moreno at the time the incident occurred. Defense counsel further argued that defendant is not a flight risk because he lives in Lake County and his criminal history was almost entirely out of Cook County. He has resided in Lake County for the past six years and is his aunt's caretaker. Defense counsel further addressed defendant's criminal history, noting that defendant had a conviction of unlawful use of a weapon from 2011, and "[t]hen a couple domestic batteries, one in 2013, one in 2017[,] both [of] which were misdemeanors," and "a number of misdemeanor cannabis charges." He contended that these "make up the majority of [defendant's] criminal history."

¶ 16    In response, the State contended that there were compelling reasons to justify defendant's continued detention. It first argued that "independent of the gun in this case *** there is evidence that strongly supports" defendant's guilt in this case. It further indicated that there were multiple witnesses who saw defendant fire his weapon and they identified defendant on Officer Moreno's body worn camera. Further, the State noted that although defendant was not subject to a mandatory life sentence like the defendant in *Beaty*, defendant here is facing a "substantial penalty" if convicted. Additionally, the State contended that defendant poses a danger to Williams and the public, noting that defendant acted recklessly in firing multiple shots in Williams's direction.

¶ 17 The State also argued that defense counsel minimized defendant's criminal history. It noted that defendant's Pretrial Services Public Safety Assessment (PSA) Report indicated that defendant had multiple domestic battery convictions. His most recent domestic battery conviction was from 2017, in Du Page County case No. 2017-CM-2863. The State emphasized that defendant was issued three separate failure appear to warrants in that case alone. Defendant was also issued a failure to appear warrant in a 2008 case from Cook County. The State therefore contended that defendant was a flight risk despite living in the community.

¶ 18 After hearing argument from both parties, the trial court issued its oral ruling. First, the trial court noted that although it granted defendant's motion to suppress evidence, the State was not barred from prosecution of the charges, as the "impact on the State's ability to proceed without [the weapon] is not overwhelming." Next, the trial court found that there was a compelling need for defendant's continued detention. In making this finding, the trial court emphasized that at the time the instant offense occurred, defendant was on pretrial release. During the pendency of that pretrial release, defendant had been detained and released for a domestic violence case which was dismissed. The trial court also highlighted the dangerousness of defendant's actions in the instant offense, as "[p]eople could have been seriously injured or killed." Based on the dangerous nature of the current charges and defendant's "demonstrated propensity to commit offenses while on pretrial release," the trial court found that there was a continued need for detention. The court entered a written order summarizing its oral findings.

¶ 19                                 C. Motion for Relief

¶ 20 On November 24, 2025, defendant filed a motion for relief from the order detaining defendant pending the State's appeal. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In the motion, he argued that the State's case against him was "presumptively weaker," as evidenced by the State's

filing of a certificate of impairment. Defendant argued that following the motion to suppress hearing, the "State has not demonstrated an ability to produce any additional evidence to prove the charges in this matter." He also argued that the State's reliance on *Beaty* was misplaced, as the instant matter was factually dissimilar. Specifically, defendant argued that he was not subject to a mandatory life sentence and thus did not represent the same risk of flight as the defendant in *Beaty*. Finally, defendant noted that the State had made an offer to resolve the matter via a fully negotiated plea prior to filing its appeal. The State had offered three years in the Illinois Department of Corrections (IDOC) to be served at 50%. As of the date of filing the motion for relief, defendant had been in custody for 338 days, "with no prospects of the State's appeal being decided any time soon." Defendant cited *People v. Wells*, 279 Ill. App. 3d 571, 574 (1996), for the proposition that "[t]here is something decidedly wrong when pretrial detention is advanced as a matter of public safety while guilt remains in question but reunion with society is acceptable if innocence is surrendered."

¶ 21     A hearing on defendant's motion was held on November 24, 2025. Defense counsel, relying on the motion for relief, reiterated the arguments made therein. Defense counsel emphasized that defendant is presumed innocent pending trial and contended that considering the evidence presented, the State could not show compelling reasons for defendant's continued detention. Further, defense counsel argued that defendant was not a flight risk and had a limited criminal history, with nothing suggesting that he was a danger to Williams if released. Finally, defense counsel argued that defendant's detention pending the State's appeal "should not be about public safety," rather, Supreme Court Rule 604(a)(3) "mandates release."

¶ 22     In response, the State argued that there were compelling reasons for defendant's continued detention. First, the State contended that it could prove its case despite the suppression of the

firearm. Next, the State indicated that defendant's prior background suggested that he was unlikely to comply with conditions of pretrial release. Notable, in defendant's 2017 Du Page County case for misdemeanor domestic battery, defendant was placed on conditional discharge. He failed to comply with the terms of his conditional discharge and a petition to revoke was filed. A warrant was later issued in the matter due to defendant's failure to appear in court. Further, defendant's criminal history also included violent crimes. In the instant offense, defendant used a weapon at "a busy street corner *** when there is foot traffic and other traffic," creating a heightened likelihood of harm.

¶ 23    Defense counsel argued that defendant's likeliness of complying with pretrial conditions should not be considered in determining whether defendant should be detained pending the State's appeal. He contended that because defendant at this stage "cannot be held to conditions," he should be released "absent showing of compelling reasons."

¶ 24    Following argument by the parties, the trial court denied defendant's motion for relief. The court found that there were compelling reasons for defendant's continued detention. Notably, the trial court determined that defendant poses a danger to the community and is unlikely to comply with any conditions of release based on his criminal history. The trial court indicated that the State could still prove the allegations against defendant and the presumption of defendant's release was overcome by the compelling reasons for defendant's detention. The court emphasized that defendant is a felon and was alleged to have discharged a gun at members of the community.

¶ 25    On November 24, 2025, defendant filed a notice of appeal. The court appointed the Office of the State Appellate Defender (OSAD) to represent defendant. OSAD elected not to file a memorandum under Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024) (providing that the issues raised in the motion for relief are before the appellate court regardless of whether an optional

memorandum is filed). Thus, on appeal, we are limited to the arguments made in defendant's motion for relief. The State filed a response in opposition to the appeal.

¶ 26                                    II. ANALYSIS

¶ 27     On appeal, defendant argues, in sum, that the trial court erred in not ordering him released during the pendency of the State's interlocutory appeal because the State failed to meet its burden of showing "compelling reasons" justifying his continued detention pursuant to Rule 604(h)(3).

¶ 28     Rule 604(a)(1) provides, in pertinent part, that in criminal cases, "the State may appeal only from an order or judgment the substantive effect of which results in *** suppressing evidence." Ill. S. Ct. R. 604(a)(1) (eff. Apr. 15, 2024). Pursuant to Rule 604(a)(3), a defendant "shall not be held in jail or to bail during the pendency of an appeal by the State *** unless there are compelling reasons for his or her continued detention or being held to bail." Ill. S. Ct. R. 604(a)(3) (eff. Apr. 15, 2024); see *People v. Baltimore*, 381 Ill. App. 3d 115, 125 (2008) ("When the State seeks interlocutory appeal of an adverse order, the State must restore the defendant's freedom unless it can establish compelling reasons to override the rule's mandate."). See also *Beaty*, 351 Ill. App. 3d at 722-23 ("Rule 604(a)(3) confers unconditional release and restores people to the same freedom enjoyed before any charges were initiated.").

¶ 29     The appellate court has described the principal purpose of Rule 604(a)(3) as follows:

"Its paramount aim is to guarantee protection from the power granted the State under Supreme Court Rule 604(a)(1) [citation] and Supreme Court Rule 604(a)(4) [citation]. Supreme Court Rule 604(a)(1) grants the State an absolute right to interlocutory appeal from orders suppressing evidence. Exercise of that right takes no more than the filing of a notice of appeal together with a certificate of impairment. [Citation.] The certificate of impairment is unimpeachable. [Citation.] At the same time, Supreme Court

Rule 604(a)(4) suspends statutory speedy trial rights once appellate jurisdiction is invoked under Supreme Court Rule 604(a)(1). Therefore, the State's right to interlocutory appeal under Supreme Court Rule 604 imparts to the State an unchallengeable power to significantly delay trial and, by the same act, free itself from statutory duties to prosecute promptly. Supreme Court Rule 604(a)(3) is a defendant's only protection against abuse of this power." *People v. Wells*, 279 Ill. App. 3d 564, 568 (1996).

¶ 30    To justify continued detention during an interlocutory appeal, the State must show compelling reasons. See Ill. S. Ct. R. 604(a)(3) (eff. Apr. 15, 2024). This standard has been described by the appellate court as follows:

"The touchstone for determination of detention rather than release under the rule is a showing that reasons *compel* detention. Compelling reasons are forceful and impelling reasons irresistible in sense and purpose that afford justification for indeterminate pretrial imprisonment. Such reasons must clearly demonstrate that a defendant should remain imprisoned for an uncertain and indefinite time despite the presumption of innocence and the weakened posture of the State's case.

The State should always be able to present good reason why a charged defendant should remain in jail. After all, defendants are never detained without good reason. Reasons meeting the standard set forth in Supreme Court Rule 604(a)(3), however, are reasons over which reasonable minds would not diverge. They compel the conclusion that detention pending interlocutory appeal is the right thing to do." (Emphases in original.) *Wells*, 279 Ill. App. 3d at 569.

¶ 31    We review the trial court's compliance with a supreme court rule *de novo*. *People v. Lloyd*, 338 Ill. App. 3d 379, 384 (2003).

¶ 32    As an initial matter, defense counsel here argued in the motion for relief hearing that defendant's likelihood of complying with pretrial conditions and public safety should not be considered in determining whether defendant should be detained pending the State's appeal because at this stage he "cannot be held to conditions" of release. In *People v. Safranek*, 2025 IL App (4th) 240969-U, the appellate court considered a similar question.

¶ 33    In *Safranek*, the defendant argued that the trial court erred in evaluating her continued detention during the State's appeal under the provisions of section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2020)). *Safranek*, 2025 IL App (4th) 240969-U, ¶ 31. The defendant contended that the reliance on section 110-6.1 of the Code was in error because "pretrial detention historically has been treated as a separate and different matter than the defendant's incarceration during a State's interlocutory appeal" and the requirement for compelling reasons to justify continued detention "necessarily must be more burdensome on the State than merely meeting the requirements to detain a pretrial defendant under" section 110-6.1 of the Code. *Id.*

¶ 34    The *Safranek* court rejected this argument. Citing to *Wells*, 279 Ill. App. 3d 564, 569 (1996), the court highlighted that

> "The type of reasons to be tested under [Rule 604(a)(3)] calls for nothing unique or novel. The reasons set forth in section 110-5 of the [Code] [citation] for use in the determination of the amount and conditions of initial bail are the type of reasons used for the determination of detention under [Rule 604(a)(3)]. The rule simply subjects these reasons to a higher standard. *** Obviously, the rule contemplates heightened scrutiny. Otherwise, the rule would be pointless."

¶ 35    Noting that the trial court did not refer to the reasons set forth in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)), but rather those set forth in section 110-6.1(e)(3)(i) of the Code

(725 ILCS 5/110-6.1(e)(3)(i) (West 2022)) (whether any "condition or combination of conditions" could mitigate the threat defendant posed to the safety of persons or the community), the *Safranek* court determined that "there is no reason why the latter could not constitute the requisite 'compelling reasons' [citation] for continued detention if they met the 'higher standard' and 'heightened scrutiny' contemplated by Rule 604(a)(3)." *Safranek*, 2025 IL App (4th) 240969-U, ¶ 33.

¶ 36   Accordingly, we disagree with defendant's assertion that his likelihood of complying with pretrial conditions of release and the public safety threat posed by defendant's release pending the State's appeal are not relevant to our analysis. We thus turn to the question of whether there are compelling reasons which clearly demonstrate that defendant should remain detained during the pendency of the State's appeal.

¶ 37   Defendant here argues that the State did not show compelling reasons for continued detention because its case was "presumptively weaker" following the grant of the motion to suppress. "The current state of evidence in this case is an important ingredient in reaching our decision." *Beaty*, 351 Ill. App. 3d at 724. Here, even without evidence of a firearm, there is still evidence to support the State's case against defendant. See *id.* ("The likelihood of a conviction on the evidence that the State currently possesses provides a sound foundation for the State's position that enhances the compelling nature of the reasons set forth to justify continued detention.") Notably, the State has testimony from multiple eyewitnesses, including a positive identification of defendant following his arrest.

¶ 38   Next, defendant argues that the State's reliance on *Beaty* was misplaced, as defendant here does not demonstrate the same risk of flight or the same risk to the complaining witness or the community. While defendant here is not charged with a crime for which conviction mandates a life

sentence in prison, as was the case in *Beaty*, there is evidence in the record to support the State's contention that defendant poses a risk of flight if released. Notably, in a 2017 Du Page County domestic battery case, defendant was issued three failure to appear warrants. Defendant was also issued a failure to appear warrant in a 2008 Cook County misdemeanor marijuana case. In both cases, defendant failed to appear in court despite living locally. Additionally, defendant's prior criminal history reflects a history of violent crime and crimes involving weapons. At the time of the instant offenses, defendant was on pretrial release for reckless conduct, resisting arrest, and obstruction. In addition to defendant's 2017 conviction of domestic battery, defendant also had a 2013 conviction of violating an order of protection, a 2013 conviction of domestic battery, and a 2012 conviction of aggravated unlawful use of a weapon. Defendant's criminal history here is of increased concern, as he is alleged to have shot a firearm in the direction of another person in front of a group of people, although it is unlawful for defendant to be in possession of a firearm.

¶ 39    Finally, defense counsel noted that the State had made an offer to resolve the matter via a fully negotiated plea prior to filing its appeal. Defendant cites *People v. Wells*, 279 Ill. App. 3d 571, 574 (1996) (*Wells II*), for the proposition that "[t]here is something decidedly wrong when pretrial detention is advanced as a matter of public safety while guilt remains in question but reunion with society is acceptable if innocence is surrendered."

¶ 40    In *Wells I*, the appellate court reviewed the defendant's detention after the appellate court had previously ordered (see *People v. Wells*, 279 Ill. App. 3d 564 (1996) (*Wells I*)) the State "to show that reasons compelled further confinement." *Wells II*, 279 Ill. App. 3d at 572. However, the State "allowed the basis of its charge to remain obscure," and the "means by which it plan[ned] to convert accusation into guilt remain[ed] a secret of the State." *Id*. Despite having no compelling

reason to give the appellate court for the defendant's continued detention, defendant remained incarcerated pending the State's appeal. *Id*.

¶ 41    Here, however, the State has clearly articulated compelling reasons for defendant's continued detention based upon its ability to prosecute the charges regardless of the admissibility of the firearm, defendant's criminal history and previous failures to appear in court, and the danger posed to the community based on the allegations in the instant offenses.

¶ 42    Based upon our *de novo* review of the record, we conclude that the aforementioned considerations demonstrate "reasons over which reasonable minds would not diverge," but rather "*compel* the conclusion that detention pending interlocutory appeal is the right thing to do." (Emphasis in original.) *Wells I*, 279 Ill. App. 3d at 569 (1996). Accordingly, we affirm the trial court's order continuing defendant's detention.

¶ 43                                III. CONCLUSION

¶ 44    For the reasons set forth above, we affirm the judgment of the circuit court of Lake County.

¶ 45    Affirmed.